IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 22, 2025

**STATE OF TENNESSEE v. KEVIN HARRIS**

**Appeal from the Circuit Court for Cheatham County**
**No. 19186     Larry J. Wallace, Judge**
_____

**No. M2024-00538-CCA-R3-CD**

_____

Defendant, Kevin Harris, appeals his Cheatham County convictions for aggravated sexual battery and rape of a child. He contends on appeal that: (1) the trial court erred in admitting the victim's forensic interview; (2) the evidence was insufficient to establish penetration; and (3) the prosecutor committed multiple instances of improper argument during closing by (a) commenting on Defendant's failure to testify and (b) vouching for the victim's credibility. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Matthew T. Mitchell (on appeal), District Public Defender, Ashland City, Tennessee; and Lonnie E. Maze, III (at trial) and Katelyn Dorwart (at trial), Nashville, Tennessee, for the appellant, Kevin Harris.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Jack Arnold, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural History*

The Cheatham County Grand Jury indicted Defendant for aggravated sexual battery and rape of a child for conduct committed against E.T.[1]  The evidence at trial established that E.T. was born on April 20, 2012.  Defendant was a family friend and a "fixture" around E.T.'s home.  On June 5, 2021, Defendant was at E.T.'s home and E.T.'s mother, J.T.,[2] noticed that E.T. "coiled away" from Defendant.  The next morning, J.T. asked E.T. what was wrong.  E.T. said that Defendant had touched her breast.  E.T.'s disclosure put J.T. "into shock."  Around an hour later, E.T. disclosed that Defendant had raped her.

J.T. contacted law enforcement and Cheatham County Sheriff's Office ("CCSO") Detective Jason Harvison spoke to J.T. about E.T.'s allegations.  On June 8, J.T. took E.T. to the Child Advocacy Center for the 23rd Judicial District ("CAC"), where Morgan Bowen conducted a forensic interview.  A video recording of E.T's forensic interview was admitted at trial and played for the jury.  E.T. told Ms. Bowen that she had told her mother a "secret" about Defendant.  E.T. said that Defendant and her mother were "good friends" and he came to the house frequently.  E.T. said that a week before the forensic interview, Defendant put his hand in her shirt and "rubbed [his hand] around" her breast and that he did this "all the time."  E.T. told Ms. Bowen that she would push Defendant away when he touched her breast.

E.T. told Ms. Bowen that six months before the forensic interview, in the wintertime, she and Defendant went to his house.  E.T. remembered that it snowed around the time these events occurred.  E.T. and Defendant went to his bedroom and she laid on the bed.  Defendant told E.T. to take off her clothes, turned off the lights, and took off his clothes.  She felt that she had to obey Defendant because he was an adult telling her what to do.  She initially said that Defendant put "his private part on [her] private part," indicating between her legs, but later clarified that Defendant put "his private part inside [her] private part."  E.T. clarified that when she referred to Defendant's "private part," she meant the private part on Defendant's body that "helps him pee."  E.T. told Ms. Bowen it was "painful," "hurtful," and "the worst thing [she] ever felt" when Defendant did this.  E.T. could not see how Defendant's body was positioned because the lights were off but believed he was on his hands and knees on top of her.  E.T. remembered that Defendant was moving his body but could not recall how.  E.T. asked Defendant to stop, but he said nothing and continued.  E.T. slapped Defendant's face and continued slapping him until he stopped.  After he stopped, Defendant told E.T., "Fine.  Let's go to your house."  Defendant instructed E.T. not to tell anyone what had happened.  E.T. did not tell her mother what had happened because she was scared that Defendant would hurt her.

---

[1] It is the policy of this Court to protect minor victims and victims of sexual offenses by using their initials.

[2] We also use J.T.'s initials to preserve E.T.'s privacy.

- 2 -

On June 16, 2021, E.T. was interviewed by Lisa Milam at the Our Kids Center, an outpatient clinic of Nashville General Hospital. E.T. also underwent a medical examination in connection with the interview. The examination revealed no physical injury or trauma to her genital area. Ms. Milam explained that physical injury or trauma is uncommon in cases of child sexual abuse. She further stated that "roughly ninety[-]three percent of [children sexually abused] will have absolutely no physical injury or trauma…".

Detective Harvison interviewed Defendant at CCSO on July 8, 2021, a video recording of which was admitted at trial. Defendant told Detective Harvison that E.T. went with him on February 10, 2021, to retrieve a truck that had gotten stuck in the mud, and Troy and Sherry Weston accompanied them. After they retrieved the truck, Defendant, E.T., and the Westons went to his house. Defendant said that at no point were he and E.T. alone together, that Mr. and Mrs. Weston were with them the entire time. Defendant told Detective Harvison that he and E.T. left his house at the same time as Mr. and Mrs. Weston. Defendant claimed he took E.T. straight to J.T.'s house. Defendant insisted that he did not rape E.T. and that he did not fondle her. He conceded, however, that he did not know of any reason E.T. would fabricate such allegations. Detective Harvison later confirmed using historical weather data that the weather in Cheatham County on and around February 10, 2021, was snowy and icy.

Mr. and Mrs. Weston testified at trial and confirmed that they helped Defendant retrieve his truck in February 2021 and that E.T. and was with them. Afterward, the four went to Defendant's house, where the two men "drank a few beers and sat down and relaxed." E.T. watched television and spoke with Mrs. Weston. Mr. and Mrs. Weston had driven separately and left in their respective vehicles after about two hours. Defendant accompanied the Westons outside as they left while E.T. stayed in the house. The Westons said that Defendant and E.T. did not leave the house when they did.

After being fully advised of his right to testify on his own behalf, Defendant chose not to testify or present any additional evidence.

The jury convicted Defendant as charged and the trial court ordered an effective forty-five-year sentence. Defendant appeals.

### *Analysis*

Defendant argues on appeal that: (1) the trial court erred in admitting Defendant's forensic interview into evidence; (2) that the evidence was insufficient to establish penetration; and (3) that the prosecutor committed improper argument by (a) commenting

on Defendant's failure to testify and (b) vouching for the victim's credibility.[3]  We address each issue in turn.

*Forensic Interview*

Defendant first argues that the trial court erred in admitting E.T.'s forensic interview because it was unreliable.  The State counters that the trial court properly exercised its discretion in admitting the interview.  We agree with the State.

Tennessee Code Annotated section 24-7-123 allows admission of a forensic interview if certain requirements are met.  One such requirement is that, "to the reasonable satisfaction of the court," a forensic interview be shown at a pretrial hearing "to possess particularized guarantees of trustworthiness."  *Id.* § (b)(2).  Eleven factors are listed to guide the trial court's trustworthiness analysis.  *Id.* § (b)(2)(A)-(K).  We review this evidentiary ruling for abuse of discretion.  *State v. Hester*, 324 S.W.3d 1, 59 (Tenn. 2010).  "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party."  *State v. Gevedon*, 671 S.W.3d 537, 543 (Tenn. 2023) (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

The record here shows that the trial court walked through each factor in the statute and explained how it weighed each factor.  Defendant takes issue with the trial court's weighing of three factors: E.T.'s mental age and maturity, the timing of her statement, and the presence of alleged leading questions from Ms. Bowen.  *See* T.C.A. § 24-7-123(b)(2)(A), (C), (G).  As an initial matter, the State argues, and we agree, that Defendant has waived his claims regarding E.T.'s alleged immaturity and the alleged leading questions.  Defendant did not argue that the interview questions were leading at the pretrial hearing on the State's motion to admit the forensic interview.  This claim is therefore waived.  *See* Tenn. R. App. P. 36(a).  As to E.T.'s maturity, Defendant raised it as an issue at the hearing, but advanced precisely the opposite argument he makes on appeal: he argued at the hearing that E.T. was mature enough to testify, so admitting the forensic interview was unnecessary; he argues on appeal that E.T. was too immature for her interview to be trustworthy.  Defendant cannot have it both ways.  This claim is waived.  *See State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988) ("It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court.").

---

[3] We have reordered Defendant's issues for clarity.

- 4 -

As to the timing of E.T.'s statement, the trial court did not view it as indicating that E.T.'s forensic interview was untrustworthy. The trial court found that "sometimes sexual crimes don't always get reported immediately, particularly with a young alleged victim, as the case is here." The trial court weighed this factor and made a specific finding on the record explaining its decision. The trial court did not abuse its discretion by so doing and did not otherwise abuse its discretion in weighing the other factors. Defendant's argument boils down to a disagreement with how the court weighed this factor. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to support a conviction for rape of a child because there was insufficient proof of penetration. He challenges only this aspect of his conviction for rape of a child and does not challenge his aggravated sexual battery conviction. The State argues that the evidence was sufficient. We agree with the State.

When examining whether the evidence presented at trial was sufficient to support a conviction, several well-settled principles guide our analysis. We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The defendant bears the burden on appeal to demonstrate that the evidence is insufficient to support his conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"[A] jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled on appeal to "the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Questions as to the credibility of witnesses and the weight of the evidence, as well as factual issues raised by such evidence, are resolved by the trier of fact, not this Court. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). These principles guide us "'whether the conviction is based upon direct or circumstantial

evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than eight (8) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522. "'Sexual penetration' means . . . any intrusion, however, slight, of any part of a person's body or of any object into the genital . . . openings of the victim's . . . body." *Id.* § -501(7). "[T]here is . . . 'sexual penetration' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered . . . ; the entering of the vulva or labia is sufficient." *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001) (quoting *Hart v. State*, 21 S.W.3d 901, 905 (Tenn. 2000)).

There was sufficient evidence here for a rational trier of fact to find that Defendant penetrated E.T.'s vagina with his penis. E.T. first said that Defendant put "his private part on [her] private part" but later clarified that he put "his private part inside [her] private part." E.T. said that Defendant's private part was the part on his body that "helps him pee" and indicated between her legs when she referred to her private part. E.T. said she knew Defendant had put his private part inside her private part because "[she] felt what [she] felt." E.T. described the pain as "the worst thing [she] ever felt." Defendant claims that these statements were unreliable, but we will not engage in an exercise of reweighing E.T.'s credibility. That, of course, is the prerogative of the jury. By their verdict, the members of the jury quite obviously believed E.T. Defendant is not entitled to relief on this issue.

*Improper Argument*

Defendant contends that the prosecutor committed improper argument by commenting on Defendant's failure to testify and by vouching for the victim's credibility. The State argues that these claims are waived for failure to contemporaneously object and, alternatively, that the arguments were not improper. We agree with the State that these claims are waived.

Our supreme court "has long held that a defendant's failure to contemporaneously object to alleged prosecutorial misconduct during closing argument results in waiver of the issue on appeal." *State v. Enix*, 653 S.W.3d 692, 700 (Tenn. 2022). Defendant did not object at trial to the comments he now argues were improper. These issues are waived. Accordingly, we would normally view this issue through the lens of plain error at this juncture. *Id.* at 700-01. However, Defendant did not request plain error relief in his principal brief, and despite the State's briefing a plain error analysis, Defendant did not avail himself of the opportunity to file a reply brief to address plain error. We decline to analyze this issue for plain error where Defendant has not requested we do so. *See State v.*

*Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 455193, at \*5 (Tenn. Crim. App. July 14, 2023) ("[O]nly particularly compelling or egregious circumstances could typically justify our *sua sponte* consideration of plain error relief."), *no perm. app. filed*. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the reasons discussed above, we affirm the judgments of the trial court.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE